283 N.J. Super. 223 (1995)
661 A.2d 826
STATEWIDE HI-WAY SAFETY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
NEW JERSEY DEPARTMENT OF TRANSPORTATION; CRISDEL GROUP, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS, AND JAMES J. ANDERSON CONSTRUCTION CO., INC., A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, DEFENDANT-RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1995.
Decided July 20, 1995.
*224 Before Judges MICHELS, STERN and KEEFE.
Steven E. Brawer argued the cause for appellant Statewide Hi-Way Safety, Inc. (Mandelbaum, Salsburg, Gold, Lazris, Discenza & Steinberg, attorneys; Mr. Brawer, of counsel and on the brief, reply letter brief and supplemental letter brief).
David J. Kenny argued the cause for cross-appellant James J. Anderson Construction Co., Inc. (Hartsough & Kenny, attorneys; Mr. Kenny, of counsel and on the brief).
John F. Casey argued the cause for respondent Crisdel Group, Inc. (Wolff & Samson, attorneys; Arthur S. Goldstein, of counsel; Mr. Casey, on the brief and supplemental letter brief).
Kelly J. Williams, Deputy Attorney General, argued the cause for respondent State of New Jersey, Department of Transportation (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Christine R. *225 Bork, Deputy Attorney General, on the brief; Ms. Williams on the supplemental letter brief).
The opinion of the court was delivered by STERN, J.A.D.
Statewide Hi-Way Safety, Inc. (Statewide), appeals and James J. Anderson Construction Co., Inc. (Anderson), cross-appeals from an administrative determination of the Department of Transportation (Department or NJDOT). The Department rejected Statewide's bid for highway construction work on the ground that its bid of $7,561,000 for the "cost component" of a highway project exceeded the maximum amount it could bid in light of its bid rating classification, pursuant to N.J.A.C. 16:44-1. The Department also determined that Crisdel Group, Inc. (Crisdel), was the lowest responsible bidder.
Before us, Statewide contends that the award of the bid to Crisdel should be reversed because the Department failed to take into account all relevant information concerning its pre-qualification classification and project rating. Statewide also argues that Crisdel's bid should have been rejected in the absence of a properly totalled bid, and because the Department improperly neglected to total the line items contained in Crisdel's bid and to read the total aloud, as required by N.J.S.A. 27:7-29. On its cross-appeal, Anderson also contends that the failure to read Crisdel's bid aloud violated the requirements of law and public policy.
On an emergent application to this court, we denied Statewide's application to stay the award. That fact is significant because it was conceded at oral argument before us that the highway construction project involved is substantially completed. It is, thus, too late to order rebidding or to award the contract to another bidder. Any order of this court to terminate the project at this juncture would be contrary to the public interest.
*226 In these circumstances, we must dismiss the appeal as moot. See Sente v. The Mayor and Municipal Council of the City of Clifton, 66 N.J. 204, 205, 330 A.2d 321 (1974); Cinque v. New Jersey Department of Corrections, 261 N.J. Super. 242, 243-44, 618 A.2d 868 (App.Div. 1993). However, because of its public importance, we address one of the issues raised by the appeal. Cf. In re Boardwalk Regency Corporation for a Casino License, 90 N.J. 361, 368, 447 A.2d 1335 (1982); John F. Kennedy Memorial Hospital v. Heston, 58 N.J. 576, 579, 279 A.2d 670 (1971). Busik v. Levine, 63 N.J. 351, 363-64, 307 A.2d 571 (1973), appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973).
On May 26, 1994, NJDOT advertised the bids for construction work on Route 76 (Section 3M) and Route 295 (Section 10M) (Project). Sealed bids were to be accepted at 10:00 a.m. on June 30, 1994. It is uncontested before us that, prior to the opening of bids on June 30, 1994, the following statement was read to the prospective bidders:
All documents accompanying the bid proposals of all bidders shall be checked for completeness, and the mathematical calculations of each proposal will be checked, and the necessary corrections made, to determine the correct total amount. Proposal guarantees will be returned to all except the actual lowest and next lowest bidder after all bids have been checked and corrections made. The Commissioner reserves the right to reject any or all bids in accordance with the provisions of New Jersey Statutes Annotated Title 27:7-30.
See N.J.S.A. 27:7-30, which permits rejection of bids "not in accord with the advertisement of specifications, or for any other irregularity ... or for any other cause."
The Project involves a "cost-plus-time contract which consists of two components": (1) "the dollar amount for all work to be performed under the contract" and (2) "an estimate of the total number of days required to complete the contract multiplied by a daily road user cost." The "lowest bid determination" for the project "is based on the total of these two components. The contract price, however, is awarded based upon only the first component."
*227 Pursuant to N.J.S.A. 27:7-29, NJDOT received seven bids, but only five bids were publicly read. The parties agree that Statewide, Crisdel and Anderson were the three lowest bidders. The bids from Statewide and Anderson, but not the bid from Crisdel, were totalled and read publicly. When the bids were opened, Statewide, with a bid of $11,811,000, was declared the "apparent low bidder," and Anderson, with a bid of $13,739,440.36, was declared "apparent second low bidder."
All the bidders' proposals were then publicly turned over to a microfilm technician for copying and review by NJDOT staff to determine the "actual lowest bidder." See N.J.A.C. 16:44-5.1. As a result of this review, NJDOT determined that Statewide's bid of $7,561,000 for the "cost component" exceeded its "project rating," which is "the maximum dollar amount ... a contractor can bid on an individual project," pursuant to N.J.A.C. 16:44-1.1. In the words of the Assistant Commissioner of Transportation, "[s]ince Statewide's bid exceeded its project rating in both classification categories [for which it was pre-qualified], the Department of Transportation determined that the Statewide bid had to be rejected." During the same review, a calculation or "recalculation of the bid submitted by Crisdel, which was not totalled and therefore not read at the bid opening, rendered it apparent low bidder, with a bid of $12,983,116.12. Anderson remained apparent second low bidder."
In administrative proceedings, Statewide challenged the determination that its bid exceeded its pre-qualification classifications. Because the case is moot, a discussion of that issue is not relevant to our determination. We will not, therefore, detail those proceedings except to note that Statewide also contested the award to Crisdel on the basis that its bid "was not totalled when submitted and therefore not read."
Ultimately, Statewide's contentions were rejected by the Department and the contract was awarded to Crisdel. Statewide, thereafter, filed a notice of appeal and applied to this court for an "emergent stay pending disposition of appeal" and "for acceleration of appeal." We denied the application. The Supreme Court *228 also denied a stay. Anderson, served with a copy of the notice of appeal, filed a cross-appeal.[1]
Statewide contends that "NJDOT's own regulations and contractual requirements mandate that a bid which failed to list a total price and, accordingly, was not publicly read, should have been rejected." Anderson similarly contends that the "failure to read the bids aloud violates the explicit requirements of N.J.S.A. 27:7-29 and public policy." Crisdel asserts, however, that Statewide lacks standing to challenge the award to it because a "party who will not be awarded the contract as a result of a successful challenge to another party's award lacks standing to bring a challenge to a public entity's award of that contract." Crisdel contends that because Statewide did not comply with the pre-qualification requirements for bidding on the Project, it could not have been granted the award and, therefore, lacks standing to pursue this appeal even on the statutory claim. In view of our disposition, we do not find it necessary to pass upon the standing question in these circumstances. But see Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 479-81, 284 A.2d 161 (1971), cert. denied, 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972); Saturn Construction Company, Inc. v. Board of Chosen Freeholders, 181 N.J. Super. 403, 407, 437 A.2d 914 (App.Div. 1981).
N.J.S.A. 27:7-29 deals with advertising for bids and bidding on projects involving the construction and maintenance of State highways. It provides:
The commissioner shall advertise for bids on the work and materials covered by the plans and specifications for each project.
The advertisement shall be by public notice published for at least 3 weeks before bids on the contract may be received, at least once a week in each of two *229 newspapers printed in the county or counties where the roads are located, and in one other newspaper in Trenton, and may be inserted in one or more American engineering periodicals.

The advertisements shall give a brief description of the work and materials required, specify where plans and specifications can be seen or had, the hour, date, and place where the sealed proposals will be received and publicly opened and read, and such other pertinent information as the commissioner may include.
[(emphasis added).]
To implement the statute, the Commissioner has adopted N.J.A.C. 16:44-5.1c, which expressly requires that all "bid proposals will be open and reviewed for acceptability and total bid prices will be read." Further, N.J.A.C. 16:44-5.1e requires that "NJDOT shall examine all bid documents for completeness, conformity with requirements [and] conformity with requirements in mathematical accuracy."[2] Section 102.14 of the "standard specifications for road and bridge construction" with respect to this project also requires that the "[p]roposals will be opened and read publicly at the time and place indicated in the Advertisement or such other time and place as may be established by Addendum." In section 103.01, the specifications also provide that the contract would be awarded "on the basis of the Total Contract Price," determined by the computation of the specific "Pay Items."
In rejecting Statewide's challenge to the rejection of its bid, the Assistant Commissioner stated:
[S]ubsequent to the bid opening and initial review at the bid table, it is NJDOT's procedure, pursuant to N.J.A.C. 16:44-5.1(f), to immediately hand the bids to a microfilm technician for processing. Pursuant to N.J.A.C. 16:44-5.1(e), all bids are recalculated to determine the exact total bid by each contractor. Consequently, no bidder, not even those which are deemed "apparent low bidder" and "apparent second low bidder", is assured of its final position until the recalculations are complete. Additionally, in this instance, the final bid totals were placed on an electronic bulletin board, which can be accessed by contractors, within several hours of the bid opening. Nowhere in this process was the "integrity of the bidding process" tainted or compromised in any way.
The rules and guidelines enumerated in N.J.S.A. 27:7-29, N.J.A.C. 16:44-5.1(k), N.J.A.C. 16:44-5.4(a) and NJDOT Specifications § 102.15 (para. 7) and § 103.01, *230 relating to the reading of bids and the totalling of the contract price, cited by Statewide, have been protected by safeguards incorporated in NJDOT procedures. Those procedures expressly contemplate the recalculation of all bids submitted and are designed to maintain the integrity of the bidding system. Given those procedures, the fact that a total contract price was not provided by Crisdel and that after recalculation Crisdel was deemed low bidder in no way taints that system.
Before us, the Attorney General on behalf of NJDOT asserts that the placement of the bids on the electronic bulletin board shortly after they were opened avoids any concern about fraud or similar impropriety. The Department now appears to acknowledge that the Crisdel bid should have been totalled and read aloud. It contends, however, that there could have been no fraud or impropriety because of the absence of any ability to manufacture or amend the figures as evidenced by the expeditious manner in which the bids were placed on the electronic bulletin board. We write this opinion to reject that notion in future cases.
It is, of course, true that the purpose of the public bidding laws:
is to secure competition and to guard against favoritism, improvidence, extravagance, and corruption. Statutes directed toward these ends are for the benefit of the taxpayers and not the bidders; they should be construed with sole reference to the public end; and they should be rigidly adhered to by the courts.
[The Township of Hillside v. Sternin, 25 N.J. 317, 322, 136 A.2d 265 (1957) (decided under the then-existing local public contracts law).]
See also Meadowbrook Carting Company, Inc. v. Borough of Island Heights and Consolidated Waste Services, Inc., 138 N.J. 307, 313, 650 A.2d 748 (1994) (regarding Local Public Contracts Law); In re On-Line Games Production and Operation Services Contract, 279 N.J. Super. 566, 589-96, 653 A.2d 1145 (App.Div. 1995) (applying same principles to award of State contracts). To that end, we now hold, as a matter of law, that the failure to honor the statutory requirement for totalling the bid items and publicly announcing the bid total constituted a "material" deviation from the bid requirements. And because of the "material" deviation from the requirements of a bid proposal, the bid had to be rejected. As the Supreme Court noted in Terminal Construction Corporation v. Atlantic County Sewerage Authority, 67 N.J. 403, 411, 341 A.2d 327 (1975), "[i]t is firmly established in New Jersey *231 that material conditions contained in bidding specifications may not be waived."
In Meadowbrook Carting, our Supreme Court has recently reminded us, in the context of the Local Public Contracts Law, N.J.S.A. 40A:11-3 and -4, that the requirement of awarding a bid to "the lowest responsible bidder" means "that the contract must be awarded not simply to the lowest bidder, but rather to the lowest bidder that complies with the substantive and procedural requirements in the bid advertisements and specifications." Meadowbrook Carting, supra, 138 N.J. at 313, 650 A.2d 748. "Strict compliance" with the public bidding statute is required, although "minor or inconsequential discrepancies and technical omissions can be the subject of waiver." Id. at 314, 650 A.2d 748. See also Terminal Construction Corporation, supra, 67 N.J. at 411-12, 341 A.2d 327; The Township of Hillside, supra, 25 N.J. at 324, 136 A.2d 265; On-Line Games Production, supra, 279 N.J. Super. at 594-96, 653 A.2d 1145 (applying the same standard to an award by the State Treasurer, subject to a limited scope of review). Thus, in In Re Route 280 Contract, 179 N.J. Super. 280, 431 A.2d 848 (App.Div.), certif. granted, 88 N.J. 473, 443 A.2d 692 (1981), appeal dismissed, 89 N.J. 1, 444 A.2d 51 (1982), we found that the Commissioner of Transportation could waive the attachment of an erroneous contract status list in contravention of the bid specifications where the correct list was hand delivered to the Department on the day the bids were opened.
Here, we are not dealing with an "inconsequential discrepancy" or "technical omission" regarding a bid specification. See Meadowbrook Carting, supra, 138 N.J. at 314, 650 A.2d 748. The policy embodied in the governing statute requires the bids on State highway projects to be opened, calculated and read aloud at the time of bid. Moreover, while this case involves the failure of the State agency to itself comply with the mandate of N.J.S.A. 27:7-29, we are satisfied that longstanding judicial policy requiring "strict compliance" with bidding requirements also requires the governmental entity to "strictly comply" with the requirements of all governing statutes.
*232 While it is true that minor bid requirements may be waived, those situations are limited to matters where there is neither the possibility nor the perception of "corruption, or favoritism" and involve requirements which do not go to the heart of the competitive bidding process. See Terminal Construction, supra, 67 N.J. at 412, 341 A.2d 327; Matter of On-Line Production, supra, 279 N.J. Super. at 594, 653 A.2d 1145. For example, the Terminal Construction Court indicated that:
there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions [which] may not under any circumstances be waived.
[Terminal Construction, supra, 67 N.J. at 412, 341 A.2d 327.]
Announcement of the amount of the bid upon opening, before there is any opportunity for amendment or modification, promotes integrity and faith in the process. This is not a case where there was a mere error in calculation or failure to add up the component figures. Rather, there was no reference at all at the time the bids were opened to the figures actually submitted by Crisdel. While we need not determine if the failure to calculate or read the total, by itself, constitutes a material deviation from the requirements of law, we hold that the failure to both read the elements of the bid and to announce a total must be deemed a "material" deviation from the requirements of N.J.S.A. 27:7-29. Thus, a party with standing could prevail in compelling rejection of the Crisdel bid in these circumstances.
Nevertheless, as we noted at the outset, it would now be contrary to the public interest to void the contract already awarded even for any remaining uncompleted portion of the road construction. We denied emergent relief to Statewide when a remedy was available, undoubtedly due to the deference we must give to the Commissioner's determination concerning its pre-bid *233 qualification status and because we then thought the electronic bulletin board evidenced the absence of any possibility of fraud or corruption with respect to this award. We note, however, that we are cognizant of the need to grant stays, pending appeal, in cases like this which reflect a statutory deviation from the required bidding process. See Crowe v. De Gioia, 90 N.J. 126, 129, 132-34, 447 A.2d 173 (1982); R. 2:9-8. As the authority with jurisdiction to review final actions of a State administrative agency, R. 2:2-3(a)(2), we recognize our obligation to enter a stay to "prevent some threatening, irreparable mischief which should be averted until opportunity is afforded for a full and deliberate investigation of the case." Crowe, supra, 90 N.J. at 132, 447 A.2d 173 (quoting Thompson, Attorney General v. Paterson, 9 N.J. Eq. 624, 625 (E. & A. 1854).
The appeal is, nevertheless, dismissed as moot.
NOTES
[1] Anderson did not participate in the administrative proceedings commenced by Statewide. Nor did it participate in the application for emergent relief pursued before us by Statewide after the NJDOT rendered its decision on August 5, 1994. In light of our disposition, we do not decide whether Anderson has standing to now challenge the determination by its cross-appeal. Anderson would be the successful low bidder if the Crisdel bid had to be rejected, Statewide was not qualified to bid, and a contract had to be awarded on the bids submitted.
[2] That regulation further provides, however, that "adjustments will be made by the Bureau of Construction Services where necessary to establish the correct total bid amount."