797 A.2d 216 (2002)
351 N.J. Super. 160
ADVANCE ELECTRIC COMPANY, INC., Plaintiff/Appellant,
v.
MONTGOMERY TOWNSHIP BOARD OF EDUCATION, Defendant/Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted April 15, 2002.
Decided May 21, 2002.
*217 Hill Wallack, attorneys for appellant (Patrick D. Kennedy and Maeve E. Cannon, of counsel; Ryan A. Marrone and Anthony L. Velasquez, on the brief).
Parker, McCray & Criscuolo, Cherry Hill, attorneys for respondent Montgomery Township Board of Education (James F. Schwerin, on the brief).
David Samson, Attorney General, attorney for respondent State of New Jersey (Patrick DeAlmeida, Deputy Attorney General, of counsel; Elaine C. Schwartz, Deputy Attorney General, on the brief).
Before Judges KESTIN, STEINBERG and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
Plaintiff, Advance Electric Company, Inc. (Advance), appeals from the denial of its application seeking to restrain the Montgomery Township Board of Education (Board) from awarding a contract to BML Productions, Inc. (BML), a contractor that intended to use one of Advance's competitors as the electrical subcontractor to replace and install stage lighting at the Montgomery Township High School theater. Under N.J.S.A. 18A:18A-18(b), a public school board may award a contract to a prime contractor, who may then subcontract specific portions of the job only to a qualified subcontractor. Advance argues that no regulations exist under which subcontractors for public school contracts may be qualified, and that the portion of the statute under which the bid was awarded is consequently invalid.
The State contends that because the work under the subject contract has already been completed, this appeal is moot. Alternatively, the State and the Board assert that because regulations promulgated by the Department of Treasury contain standards for the qualification of subcontractors, we should affirm the trial court's determination that the statute upon which the contract was bid is valid. We consider this matter on the merits and affirm.

I
In 2000, the Board issued a request for proposal (RFP) seeking bids for the replacement and installation of stage lighting and a dimming control system for the Montgomery Township High School. The RFP required that the bidding contractor provide the names of all subcontractors to whom work would be subcontracted, "each of which shall be qualified and shall provide proof thereof with the bid." On December 18, 2000, the contract was awarded to BML Productions, Inc. Advance, which *218 also bid on the contract, protested that award, claiming that BML was not certified or licensed as an electrical contractor.
The matter was transmitted to the Office of Administrative Law (OAL) for hearing, and on January 8, 2001, Administrative Law Judge Robert S. Miller issued an order staying the award of the contract. Further hearings were to be scheduled. On January 29, 2001, the State Board of Education affirmed Judge Miller's stay and remanded for further hearings. Before those hearings could commence, however, the Board canceled the contract to BML and re-bid the project.
A new RFP was then prepared to solicit bids for the project. BML again submitted a bid, this time using Electric Wire as its electrical subcontractor. Although Advance claims that Electric Wire was not in compliance with the registration requirements of the "Public Works Contractor Registration Act," N.J.S.A. 34:11-56.48 to -56.57, the Board submitted correspondence in connection with this appeal indicating that Electric Wire was duly registered.
Advance then filed a complaint in Superior Court alleging that no qualification standards for electrical subcontractors had been adopted as required by the Public School Contracts Law, N.J.S.A. 18A:18A-1 to -59 (the Act), and that no local board of education could solicit bids from contractors for all of the work on a particular project, which work would then be subcontracted out. According to Advance, the Board's only recourse at this point would be to re-bid the contract seeking separate bids for each portion of work to be done under the contract. Advance sought temporary restraints against the award to BML. It also sought a ruling that the Board's bid solicitation was illegal and that the contract must be re-bid.
Judge Rosemarie R. Williams denied Advance's application, declining to exercise jurisdiction in light of the hearing still pending before the OAL. A week later, Judge Miller issued an order noting that the only issue before him was the award of the contract to BML in late 2000, that he was not confronted with the issue raised by Advance in its complaint, and that in his view nothing prevented the Superior Court from accepting jurisdiction over the issues raised in Advance's complaint.
After the Board announced plans to award a contract on April 23, 2001, Advance asked it to refrain from doing so until Judge Williams had issued a ruling on its complaint. Advance also filed an emergent application with the Appellate Division seeking a stay of any contract the Board might award. We denied the application in our order of April 20, 2001, stating that Advance had made "[n]o showing of a reasonable probability of ultimate success on the merits[,]" and citing Crowe v. DeGioia, 90 N.J. 126, 133, 447 A.2d 173 (1982). Moreover, the Board rejected Advance's call for a delay in awarding the contract and instead awarded it to BML.
In Judge Williams' decision, which she issued in May 2001, she described the procedural history and facts relevant to the dispute and noted the four-part test created by Crowe v. DeGioia, supra, to determine whether injunctive relief would be warranted. She also pointed to the heavy burden on Advance to demonstrate the Act's invalidity.
Judge Williams determined that under N.J.S.A. 18A:18A-27, the Department "may" adopt regulations, but does not require that it do so. She concluded that Advance's argument that regulations had to be adopted before the Act could be implemented thus was without merit. She further observed that the Department of Treasury had adopted regulations regarding *219 the classification of all contractors who bid for state contracts, which "addressed the quality of work, the experience, performance record, etc. Although this classification is a method to qualify contractors, there is nothing to support the proposition that the Legislature anticipated a different methodology for qualifying subcontractors."
The court concluded that Advance had not
demonstrated that N.J.S.A. 18A:18A-18(b) is inoperable for three reasons. First, [Advance] has not rebutted the presumption of the statute's validity by presenting clear and convincing proofs demonstrating otherwise. Second, the express language of N.J.S.A. 18A:18A-27 provides that the State Treasurer may enact regulations and does not require that the promulgation of such regulations be mandatory. Finally, the State has already adopted qualification methodology for contractors and there is no evidence to support the proposition that a subcontractor would [be] qualified in a different manner. Since [Advance] has not met their burden as to the invalidity of the statute it follows that prongs 2, 3 and 4 of the Crowe v. DeGioia test have not been satisfied.
The court consequently denied Advance's application to stay the award or implementation of the contract to BML and denied Advance's application to invalidate N.J.S.A. 18A:18A-18(b).
Advance then moved for reconsideration of Judge Williams' decision, arguing that a response by the Department of Treasury to a comment made upon the Department's re-adoption, with amendments, of its bidder classification and qualification rules demonstrated that those rules were not intended to qualify subcontractors under the Act, see 33 N.J.R. 712 (February 22, 2001). Judge Williams denied this motion as well.

II
The State contends that the subject contract has been completely performed, and that this appeal is thus moot and should be dismissed. Alternatively, it asserts that Advance lacks standing because it will not suffer any harm if the statute is found valid.
A case is moot if the disputed issue was resolved, at least with respect to the parties who instituted the litigation. DeVesa v. Dorsey, 134 N.J. 420, 428, 634 A.2d 493 (1993) (Handler, J., concurring); Oxfeld v. New Jersey State Bd. of Educ., 68 N.J. 301, 303-04, 344 A.2d 769 (1975). Moot or academic appeals are generally dismissed. Cinque v. New Jersey Dep't of Corrections, 261 N.J.Super. 242, 243, 618 A.2d 868 (App.Div.1993). Thus, a court will not decide a case if the issues are hypothetical, a judgment cannot grant effective relief, or there is no concrete adversity of interest between the parties. Anderson v. Sills, 143 N.J.Super. 432, 437, 363 A.2d 381 (Ch.Div.1976). Courts occasionally will rule on such matters where they are of substantial importance and are capable of repetition while evading review, however. Mistrick v. Div. of Med. Assistance and Health Servs., 154 N.J. 158, 165, 712 A.2d 188 (1998); Zirger v. General Accident Ins. Co., 144 N.J. 327, 330, 676 A.2d 1065 (1996).
Even assuming the work under the contract in issue has been completely finished, we disagree that the appeal should be dismissed as moot. First, this issue plainly is capable of frequent recurrence until such time as either subcontractor qualification regulations are specifically adopted under the Act, or until the issues that Advance now raises are judicially resolved. *220 Moreover, given the time it takes to hear and decide appeals, it is likely that future appeals on the same issue would not be decided until the construction was completed. This appeal squarely implicates the public bidding process, which is a matter of great public interest.
In Statewide Hi-Way Safety, Inc. v. New Jersey Dep't of Transp., 283 N.J.Super. 223, 225, 661 A.2d 826 (App.Div.1995), we denied an unsuccessful bidder's application for a stay and thus the subject contract was substantially completed. Although we dismissed the appeal as moot, we also noted that "because of its public importance, we address one of the issues raised by the appeal." Id. at 226, 661 A.2d 826.
Similarly, in Gross v. Ocean Tp., 92 N.J. 539, 541, 457 A.2d 836 (1983), an unsuccessful bidder on a public contract filed suit, claiming that the township's bidding procedure was invalid. Although the appeal was deemed "technically moot, inasmuch as the one-year period of the contract for which bids were subject has long since expired," the Supreme Court nevertheless addressed the issue raised in the appeal because of the "portentous nature" of the appeal. Ibid. Moreover, O'Shea v. Bd. of Educ. of Tp. of Franklin, 127 N.J. 244-45, 604 A.2d 87 (1992), does not require dismissal of this appeal. In O'Shea, the Supreme Court dismissed an appeal as moot after concluding that a newly-adopted statute resolved for the future the issue raised in the appeal; thus, the issue was not capable of repetition. Moreover, since the project was completed, there was no controversy remaining between the parties. Ibid. Here, however, no statute was adopted which moots the issue and makes it unlikely that it will be raised again.
Given the public importance of the issues raised by Advance, coupled with the likelihood of their repetition, we hold that, although technically moot, this appeal should be decided on its merits.[1]

III
We now consider Advance's contention that, until separate classification standards are adopted regarding the qualifications of subcontractors bidding for public school contracts, we should declare invalid the portion of the bidding statute permitting the award of a public school contract to a contractor who will use qualified subcontractors. We proceed, of course, from the firmly-established principle that a trial court's interpretations of the law and the legal consequences flowing therefrom are not entitled to any special deference on appeal. Manalapan Realty v. Manalapan Tp. Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995); LaSala v. LaSala, 335 N.J.Super. 1, 6, 760 A.2d 1122, (App.Div.), certif. denied, 167 N.J. 630, 772 A.2d 932 (2001); Muise v. GPU, Inc., 332 N.J.Super. 140, 157, 753 A.2d 116 (App. Div.2000). Here, the issues that Advance raises involve the proper interpretation of the Act, and whether the classification regulations adopted by the Department can be applied to qualify subcontractors for contracts under the Act. These issues are purely legal ones, and thus we need not defer to the trial court's determination.
We are in substantial agreement, however, with the views expressed in Judge Williams' written opinion and we affirm *221 essentially for those reasons. Judge Williams correctly declined Advance's invitation to hold N.J.S.A. 18A:18A-18(b) invalid, despite the absence of regulations specifically adopted under the Act to qualify subcontractors used by contractors on contracts procured under the Act. We add the following, however.
Plaintiff's contentions essentially do not go beyond the undisputed fact that the Act requires subcontractors to be "qualified," from which plaintiffs conclude that there must be regulations to govern their qualification. The Act itself does not, however, require such regulations.
Our review shows that a longstanding procedure already exists for qualifying subcontractors in accordance with N.J.S.A. 18A:18A-1. Under N.J.S.A. 18A:18A-18(b), "each ... subcontractor [ ] shall be qualified in accordance with this Chapter [N.J.S.A. 18A:18A-1 to -59]," and under N.J.S.A. 18A:18A-27, "reasonable regulations for controlling the qualifications of prospective bidders" may be, but are not required to be, established by the State Treasurer. Moreover, under N.J.S.A. 18A:18A-26, "all persons proposing to bid on any contract requiring public advertisement for bids with the board for public works, the entire cost whereof will exceed $20,000.00, shall first be classified in accordance with N.J.S.A. 18A:18A-27." Reading these provisions together with N.J.S.A. 52:32-2, it is evident that the system of classifying bidders is part of the evaluation procedure, that is, the classification system is a method that is employed to qualify contractors. The Legislature has never changed this system, and thus it can be deemed to have approved of it. Accordingly, Advance's claimed deficiency in the legislative and regulatory pattern for the qualification of subcontractors in fact is non-existent.
To elaborate, we note that N.J.S.A. 18A:18A-3 and -4 provide that all contracts to be awarded by a board of education which exceed, in a contract year, the total sum of $17,500, can be awarded only after utilizing a public bidding process. Prior to 1999, N.J.S.A. 18A:18A-18 provided that a board of education had to seek both bids for each separate branch of work to be performed (i.e., plumbing, electrical, etc.), and also, included in a single, overall contract, bids for all the services to be performed. The responding bids, moreover, had to identify all subcontractors to whom the bidder would subcontract all plumbing and gas fitting, heating and ventilation work, electrical work, and structural steel and ornamental iron work. Each such subcontractor "[had to be] qualified in accordance with this chapter." N.J.S.A. 18A:18A-18.
Additionally, N.J.S.A. 18A:18A-26, which has not been amended since 1983, has long provided that each board of education had to "require that all persons proposing to bid on any contract requiring public advertisement for bids with the Board for public work, the entire cost whereof will exceed $20,000.00, shall first be classified in accordance with" N.J.S.A. 18A:18A-27. With that classification requirement in place, bids can only be accepted from "persons qualified in accordance with such classification." N.J.S.A. 18A:18A-26.
Under the pre-1999 version of N.J.S.A. 18A:18A-27, the State Board of Education could establish regulations "for controlling the qualifications of prospective bidders upon contracts for public work ... by the amount, class or category of work to be performed or materials and supplies to be furnished or hired which may fix the qualifications required" of bidders.
*222 In 1999, the Act was amended.[2] Pursuant to L. 1999, c. 440, § 65, N.J.S.A. 18A:18A-18(b) now provides that
The board of education or its purchasing agent shall advertise for and receive, in the manner provided by law, (1) separate bids for each of the branches of work specified in subsection a. of this section, or (2) bids for all the work, goods and services required to complete the building to be included in a single overall contract, or (3) both. In the case of a single bid under paragraph (2) or (3) of this subsection, there will be set forth in the bid the name or names of all subcontractors to whom the bidder will subcontract the furnishing of plumbing and gas fitting, and all kindred work, and of the heating and ventilating systems and equipment, and electrical work, structural steel and ornamental iron work, each of which subcontractors shall be qualified in accordance with this chapter.
Thus, a school board may solicit contractors to submit bids either for all the work to be done, or for each portion of the work, or both.
N.J.S.A. 18A:18A-27, which was also revised in 1999, L. 1999, c. 440, § 71, now provides that the State Treasurer, rather than the State Board of Education, may establish regulations
appropriate for controlling the qualifications of prospective bidders under contracts for public works, the entire cost whereof will exceed the bid threshold, by the amount, class or category of goods or services to be provided or performed which may fix the qualifications required according to the financial ability and experience of the bidders and the capital and equipment available to them pertinent to and reasonably related to the class or category of goods or services to be provided or performed in the performance of any such contract, and may require each bidder to furnish the statement thereof.
Also relevant is N.J.S.A. 52:32-2, which provides that if a contractor bids on a project, the subcontractor it proposes to use must be "qualified in accordance with Chapter 35 of Title 52 of the Revised Statutes." Under N.J.S.A. 52:35-3, "State officials shall classify all such prospective bidders as to the character and amount of public work on which they shall be qualified to submit bids, and bids shall be accepted only from persons qualified in accordance with such classification." Finally, N.J.S.A. 52:35-11 provides that regulations can be adopted "for controlling the qualifications of prospective bidders. The regulations may fix the qualification requirements for bidders according to available capital and equipment, and with due regard to experience and records of past performance."
The Department of Treasury (Department) adopted such regulations at N.J.A.C. 17:19-1.1 to -5.11, which provide standards for the "classification and qualification" of all bidders for state contracts. Thus, the State Treasurer has, in fact, established a procedure for the qualification of contractors at N.J.A.C. 17:19-1.1, et seq. The regulations define "classification" as "the process and product of assigning *223 specific construction categories or trades and the maximum aggregate work load level(s) which define eligibility of prospective bidders." N.J.A.C. 17:19-1.1. Moreover, N.J.A.C. 17:19-2.1(a) requires each person proposing to submit bids to submit to the Department's Director of the Division of Property Management and Construction (DPMC) a statement describing its "financial ability, responsibility, plant and equipment, organization, ownership, relationships and prior experience[.]" N.J.A.C. 17:19-2.1(b) describes the specific facts each statement must contain. According to the State, the standards contained in N.J.A.C. 17:19-2.1 are used to qualify all state bidders, including both contractors and subcontractors for school projects and were used in this case.
In the face of Advance's contention that N.J.S.A. 18A:18A-18(b) is invalid because no regulation has been adopted which qualifies subcontractors that a contractor intends to use in performing a contract awarded under the Act, we emphasize that a statute is presumed to be valid, and that this presumption is a strong one. Thus, an individual challenging a statute's validity bears a heavy burden. Planned Parenthood of Central New Jersey v. Farmer, 165 N.J. 609, 619, 762 A.2d 620 (2000). Moreover, if the language of a statute is clear and unambiguous, it must be given its plain meaning. New Jersey v. Trump Hotels and Casino Resorts, Inc., 160 N.J. 505, 527, 734 A.2d 1160 (1999).
As we have noted, under N.J.S.A. 18A:18A-18(b), "each" of the "subcontractors shall be qualified in accordance with this chapter," and the only other reference to "qualifying" in Chapter 18A is in N.J.S.A. 18A:18A-26, which concerns classification of bidders on public school contracts and provides that all bidders must be properly classified for the relevant type of work. As already noted, another provision, N.J.S.A. 18A:18A-27, states that the Treasurer "may establish regulations appropriate for controlling the qualifications of prospective bidders[.]" Use of the word "may" in a statute generally signifies that the power conferred is permissive rather than mandatory. Aponte-Correa v. Allstate Insurance Co., 162 N.J. 318, 325, 744 A.2d 175 (2000). Under N.J.S.A. 18A:18A-27, as amended, regulations for classification are to control the "qualifications" of bidders. Therefore, bidders have to be qualified pursuant to these regulations promulgated under the same chapter of the School Laws as the section calling for qualification of subcontractors.
According to plaintiff, in the absence of regulations, there is no basis for determining who is qualified under the Act. This is incorrect. References to subcontractors being "qualified" pre-date the 1999 amendments which allowed single prime contracts. Subcontractors have had to be qualified all along, whether there were five prime contracts or, as has been allowed since 1999, only one. The only regulations that have ever been in place are those that deal with the classification of bidders. The system has worked well for years without challenge, and the 1999 amendments established nothing new that would justify invalidating the statutory bidding process. Subcontractors are not new to the construction scene, but earlier they were required to perform under five separate prime contracts per project rather than under a single one. Thus, not only is plaintiff incorrect is claiming that there is no qualifying of subcontractors pursuant to N.J.S.A. 18A:18A-18, but the procedure for qualifying subcontractors has remained untouched by the Legislature for many years.
N.J.S.A. 18A:18A-27, under which the Treasurer may establish a procedure for qualification, must be read in conjunction *224 with N.J.S.A. 52:32-1, et seq. with which it is in pari materia. N.J.S.A. 52:32-2 requires that all bidders for work on public buildings qualify any subcontractor. N.J.S.A. 52:32-2 in accordance with the classification mandated by N.J.S.A. 52:35-3 provides as follows:
The State officials shall classify all such prospective bidders as to the character and amount of public work on which they shall be qualified to submit bids, and bids shall be accepted only from persons qualified in accordance with such classification....
Thus, the Legislature plainly intended classification to be part of the evaluation procedure. This system is, by definition, a method to qualify contractors.
Additionally, it is evident that the Treasurer's classification regulations address quality of work, despite plaintiff's assertions that the public will not get quality work. N.J.A.C. 17:19-2.5 requires a responsibility determination, which includes consideration of technical qualifications, experience, and satisfactory performance record. N.J.A.C. 17:19-2.5(b)(2), (3) and (6). Performance ratings are covered by N.J.A.C. 17:19-2.6. A contractor may be debarred from a classification for, among other reasons, "a record of failure to perform or of unsatisfactory performance... within a reasonable time preceding the determination[.]" N.J.A.C. 17:19-3.2(a)(10).
We do not understand plaintiff to claim that any subcontractor on the project for the Montgomery High School actually was not qualified. In fact, the procedure in place as envisioned by the Legislature applies to subcontractors on public school contracts, and was utilized on the bidding for the contract at issue in the instant case.
Plaintiff apparently contends only that the statute requires a procedure for qualifying subcontractors which is separate and distinct from the procedure for qualifying contractors. This argument not only ignores the legislative intent, it also flies in the face of common sense.
The overall procedure currently in place requiring all subcontractors be qualified has remained virtually unchanged for more than twenty-five years, despite the Legislature's revisiting of the statute four times since 1977. In fact, in 1999 in its most recent amendments to the Local Public Contracts Law, the Legislature did not alter the language that is at issue in the instant matter. It is plain that the Legislature has long deferred to the current interpretation of the statute. Although the Legislature had the opportunity in 1999, if it was dissatisfied with the process used by the State and boards of education around the state, to specifically require that separate qualification regulations be adopted by either the State Board of Education or the Department of Treasury for those specific types of subcontractors identified in N.J.S.A. 18A:18A-18(b), it did not do so. We infer from this non-action by the Legislature that it accepted the process used by the State and boards of education as meeting its intent under the Act. The legislative approval of an administrative interpretation of a statute can be inferred when the Legislature, in amending a statute after a prior administrative interpretation thereof, leaves intact the language which the agency has so construed. Commissioner of Internal Revenue v. Noel, 380 U.S. 678, 681-82, 85 S.Ct. 1238, 1240, 14 L.Ed.2d 159, 162 (1965); In Re Estate of Gillmore, 101 N.J.Super. 77, 86, 243 A.2d 263 (1968), certif. denied, 52 N.J. 175, 244 A.2d 304 (1968); 2A Sutherland Statutory Construction, *225 § 49.09, at 400-401 (4th ed.1984).
In essence, the Legislature has determined that the classification of bidders, as accomplished by the Treasurer's regulations, is a reasonable method by which to qualify both bidders and their subcontractors. A component of the qualification of bidders is their classification. The Department may adopt more stringent qualification regulations with respect to the specific type of contractors named in N.J.S.A. 18A:18A-18(b) if it chooses to do so.
This conclusion is buttressed by the requirement in N.J.S.A. 18A:18A-26 that bidders be classified, and that a board of education can only accept bids from those "qualified in accordance with such classification." In fact, the subject bid here requires that "all bidders must be pre-qualified by the ... Department of Treasury, Division of Property Management and Construction ... in accordance with N.J.S.A. 18A:18A-26." Notably, it was that very Division within the Department that promulgated N.J.A.C. 17:19. Thus, contrary to Advance's argument, it and all other bidders were put on notice that they and their subcontractors would have to be pre-qualified. The only regulations under which they could do so was N.J.A.C. 17:19.
Advance's argument that the public interest would be furthered if its position was adopted is mistaken for two reasons. First, as the State argues, there would be delays in completing work already in progress or scheduled. We fail to see how the public interest would be advanced in the least by requiring the State and boards of education to establish additional regulations, when regulations already exist. To the contrary, it would be an extreme example of elevating form over substance, all to the detriment of the public interest. If public contracts bid under the current statute were required to be terminated, the result could seriously threaten the public interest. This result could well delay completion of public school contract work already in progress as well as work scheduled. It would expose the public to costs associated with terminations for convenience as well as costs associated with the preparation of new plans and specifications based on "as-built" measurements, costs associated with re-advertising, rebidding, awarding and start-up of the partially completed project, and of course, the costs associated with needless delays required awaiting legislative implementation of a procedure that already exists.
Second, we also reject Advance's assertion that the Treasurer's regulations do not address quality of work concerns. As noted, N.J.A.C. 17:19-2.1(a) requires that anyone proposing to submit a bid on a public contract must demonstrate its "financial ability, responsibility, plant and equipment, organization, ownership, relationships and prior experience." Additionally, N.J.A.C. 17:19-2.1(b) requires detailed evidence regarding these issues. N.J.A.C. 17:19-2.5 requires the Department to make a "responsibility determination" as to the financial resources, technical qualifications, experience, organization and facilities to carry out the work, and satisfactory performance record for completed projects, for any bidder. In our view, these regulations are structured to insure that quality work will be provided. Moreover, they apply to the specific types of subcontractors identified at N.J.S.A. 18A:18A-18(b), by virtue of N.J.S.A. 52:32-2 and N.J.S.A. 52:35-3, as discussed above.
Finally, Advance's argument that nothing in the Act expressly permits a local board of education to use N.J.A.C. 17:19 to qualify contractors and subcontractors bidding on school projects is also unpersuasive. While Advance correctly points out that there is no express authorization *226 for the use of those rules, it is equally true that nothing prohibits a local school board from using a system already in place (i.e., N.J.A.C. 17:19) to qualify its bidders as well. Further, that the Treasurer was given an option whether to adopt regulations under N.J.S.A. 18A:18A-27 suggests that separate regulations are not necessary. Indeed, it is beyond legitimate dispute that the use of pre-existing regulations, of which the Legislature was presumably aware, suffices to qualify contractors and their subcontractors.
Accordingly, Advance's assertions are wholly without merit and Judge Williams was correct in rejecting those contentions.
Affirmed.
NOTES
[1] We disagree with the State's argument that Advance lacks standing to appeal. Given the public importance of the bidding statutes, an unsuccessful bidder may challenge a bid award by seeking to enforce the policy of the bidding statutes. Trap Rock Inc. Inc. v. Kohl, 59 N.J. 471, 479-81, 284 A.2d 161 (1971), certif. denied, 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972).
[2] As the State properly points out, this amendment is inaccurately described in the pocket part of the volume of New Jersey Statutes Annotated. In fact, the Act was amended by L. 1999, c. 280, to be effective December 20, 1999. L. 1999, c. 280, § 4. The Act was subsequently amended again, "to incorporate the inadvertently omitted provisions of this section by L. 1999, c. 280, § 1." See note to L. 1999, c. 440, § 65. Therefore, we use the version of the Act contained in the 1999 New Jersey Sessions Laws, L. 1999, c. 280, § 1, in setting forth the text of the amended statute.