**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1848-21

388 ROUTE 22 READINGTON
REALTY HOLDINGS, LLC,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

TOWNSHIP OF READINGTON and
THE TOWNSHIP OF READINGTON
PLANNING BOARD,

      Defendants-Respondents,

and

BELLEMEAD DEVELOPMENT
CORPORATION,

      Defendant-Respondent/
      Cross-Appellant.

_____

      Argued January 16, 2024 – Decided August 1, 2024

      Before Judges Gilson, DeAlmeida, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0391-16.

Lawrence S. Berger argued the cause for appellant/cross-respondent (Berger & Bornstein, LLC, attorneys; Lawrence S. Berger, on the briefs).

Trishka Waterbury Cecil argued the cause for respondents Township of Readington and Township of Readington Planning Board (Mason, Griffin & Pierson, PC, attorneys; Trishka Waterbury Cecil, on the statement in lieu of brief).

Glenn S. Pantel argued the cause for respondent/cross-appellant Bellemead Development Corporation (Faegre Drinker Biddle & Reath, LLP, attorneys; Glenn S. Pantel, Karen A. Denys and Justin M. Ginter, on the briefs).

PER CURIAM

Plaintiff 388 Route 22 Readington Realty Holdings, LLC appeals from a January 12, 2022 order of the Law Division dismissing with prejudice its complaint in lieu of prerogative writs challenging defendant Township of Readington Planning Board's (Board) extension of defendant Bellemead Development Corporation's (Bellemead) final site plan approval for a proposed office building project. Bellemead cross-appeals from the same order, arguing that the trial court erred when it concluded that plaintiff had standing to challenge the Board's decision. Bellemead also argues that plaintiff's appeal should be dismissed as moot because the extension has expired and had no

2

impact on the validity of the final site plan approval. As a result, Bellemead argues, plaintiff cannot be afforded effective relief even if successful on appeal. We agree with Bellemead that plaintiff's appeal, which we dismiss, is moot. Because we need not address the question of standing, we also dismiss the cross-appeal as moot.

I.

Bellemead owns a 105-acre tract of land in Readington. On August 8, 1988, the Board granted final site plan approval to Bellemead's predecessor for a proposed office complex on the property (the Project). The approval had an initial eight-year vesting period. The Board extended the final site plan approval multiple times between 1996 and 2008. The extensions insulate the final site plan approval from any changes to the zoning ordinance affecting the Project during the extension period.

On June 23, 2008, the Board extended final site plan approval for the Project to July 14, 2010. In 2008, the Legislature enacted the Permit Extension Act of 2008 (PEA), N.J.S.A. 40:55D-136.1 to -136.4(a), which tolled the running time of existing approvals, including Bellemead's final site plan approval. An extension of the PEA extended Bellemead's final site plan approval to June 30, 2016.

3

A.    Plaintiff's Challenge to Sewer Capacity Allocation.

At the time of the original site plan approval, sufficient sewer capacity was not available for the Project.  To address that shortage of capacity, on September 9, 1999, Bellemead entered into a sewer plant expansion contribution agreement with Readington and the Readington-Lebanon Sewerage Authority (RLSA).  Pursuant to the agreement, the Department of Environmental Protection granted RLSA approval to expand its sewer treatment plant to accommodate an additional 400,000 gallons per day (gpd).  Bellemead paid $1,106,187 towards the expansion to reserve 58,746 gpd for the Project.  This expansion brought available sewerage capacity for the Project to 60,060 gpd, enough to construct the Project.  The expanded capacity became available to Bellemead in August 2000.  Bellemead has not constructed the Project.

Participation in the sewer treatment plant expansion was available to any property owner willing to contribute to the cost of the expansion in exchange for allocation of sewer capacity to support future development of their property.

In December 2007, plaintiff purchased property in Readington.  The property, which has a septic tank, is in the RLSA service area.  The prior owner of the property did not invest in future sewer capacity when RLSA expanded the sewer treatment plant.  Plaintiff intended to develop the property with a

restaurant and other businesses. The proposed development's projected wastewater production was above that which could be handled by the existing septic system.

In March 2010, plaintiff applied to the Readington Township Committee and the RLSA to connect its property to the sewer system and to be allocated 10,000 gpd of sewer capacity. At the time, Bellemead and other property owners who contributed to the sewer plant expansion held one third of the entire available sewer capacity assigned to Readington by the RLSA.

In its application, plaintiff noted that Bellemead and other property owners, including Merck Sharpe & Dohme Corporation (Merck), had not used their allotted sewer capacity since it became available in 2000. Plaintiff suggested the Township Committee terminate its agreement with Bellemead and the other property owners, and recapture sufficient sewer capacity to permit plaintiff to develop its property. The Township Committee denied that request.

In November 2010, plaintiff filed a complaint in lieu of prerogative writs seeking an order compelling the Township Committee to recapture 11,260 gpd of unused sewer capacity for allocation to plaintiff. Plaintiff alleged several claims, including that Readington was maintaining an illegal de facto moratorium on development by refusing to recapture unused sewer capacity

5

from property owners who not using allocated capacity in violation of N.J.S.A. 40:55D-90(b).

The trial court granted summary judgment in favor of plaintiff, finding that although the Readington sewer ordinance was facially valid, the township's policy of refusing to recapture unused sewer capacity from property owners who did not develop their properties constituted an illegal de facto moratorium on development. The court issued a writ of mandamus directing the Township Committee to review unused sewer capacity and provide a reasoned basis for not recapturing the capacity needed for plaintiff to develop its property.

In an earlier appeal, we affirmed the trial court's decision with respect to the facial validity of the ordinance, but reversed its conclusion with respect to the Township Committee's application of the ordinance. 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, No. A-0351-11 (App. Div. Sep. 4, 2013). The Supreme Court later agreed that the ordinance was facially constitutional, and also agreed with the trial court that Readington's blanket policy of not recapturing unused sewer capacity constituted a de facto development moratorium. 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 221 N.J. 318 (2015). The Court ordered the Township Committee to undertake a critical review of unused capacity to determine if any

could be recaptured for allocation to plaintiff for development of its property. Id. at 347.

On remand, the Township Committee, while recommending the recapture of a total of 9,236 gpd from several property owners, did not recommend the recapture of unused sewer capacity from Bellemead. The Township Committee noted that although Bellemead had not developed its property despite having final site plan approval for the Project for more than two decades, the delay in development was "due to [the] complexity of the [P]roject and several outside factors beyond its control, including the economy (a severely depressed market for office space)" and an intervening lawsuit.[1] Plaintiff rejected the Township Committee's offer to purchase 9,236 gpd of capacity because, in plaintiff's view, it was insufficient for its proposed development of its property.

Plaintiff thereafter amended its complaint to allege, among other things, that the Township Committee's failure to recapture capacity from Bellemead, Merck, and other property owners, violated its civil rights under the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2. Plaintiff requested that the court order the Township Committee to recapture all of Bellemead's unused

_____

[1] Bellemead's sewer capacity was unsuccessfully challenged in a suit filed by another developer in July 2003. The Supreme Court disposed of that suit in December 2006.

sewer capacity, and the sewer capacity of other property owners, and allocate 11,260 gpd of that capacity to plaintiff for the development of its property.

The trial court again remanded the matter to the Township Committee to, among other things, determine whether to recapture unused capacity from Bellemead and other property owners. On remand, the Township Committee approved the recapture of 96,325 gpd of capacity from Merck and another property owner, but not from Bellemead. Shortly thereafter, on October 31, 2016, Bellemead voluntarily tendered 11,260 gpd of its unused sewer capacity back to Readington, contingent on the court granting Bellemead's future motions "for final, unappealable summary judgment and severance" of plaintiff's claims based on Bellemead's tender of capacity.

The court subsequently granted summary judgment in favor of plaintiff on its NJCRA claims against the municipal defendants. In addition, the court granted Bellemead's motion for summary judgment. The court concluded that Bellemead's tender of 11,260 gpd of sewer capacity to Readington effectively mooted plaintiff's claims against Bellemead, as the tender is the maximum relief plaintiff could obtain from Bellemead. To ensure plaintiff had the opportunity to obtain the relief it sought, the court directed the Township Committee to hold the capacity tendered by Bellemead for plaintiff for two years commencing

February 1, 2017, conditioned on plaintiff "diligently pursuing approval of its development proposal," along with an additional year to have its development application approved. The court rejected plaintiff's argument that summary judgment in favor of Bellemead was not appropriate because plaintiff sought to recapture all of the unused sewer capacity allocated to Bellemead. The court determined that Bellemead's tender of capacity "broke[] the logjam" of sewer capacity availability in Readington and provided sufficient capacity for the development of plaintiff's property.

The trial court thereafter granted Readington's motion for reconsideration of its order granting summary judgment to plaintiff on its NJCRA claims, granted summary judgment on those claims to the municipal defendants, and dismissed the NJCRA claims. The court did not reconsider its order granting summary judgment to Bellemead.

In another prior appeal, we reversed the trial court's grant of summary judgment to the municipal defendants on the NJCRA claims, reinstated summary judgment in favor of plaintiff on those claims, and remanded for further proceedings. 388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, No. A-1826-18 (App. Div. Feb. 8, 2022). However, we affirmed

the trial court's grant of summary judgment to Bellemead. (slip op. at p. 58).

We held that

> [w]e agree with the trial court's conclusion that Bellemead's tender of 11,260 gpd of sewer capacity conditioned on its transfer to plaintiff represents all of the relief plaintiff can obtain from Bellemead. The trial court took adequate measures to ensure plaintiff had a fair opportunity to use the 11,260 gpd of sewer capacity for the development of its property . . . .
>
> [Ibid.]

We also noted that plaintiff had filed for bankruptcy in 2018, and lost title to its property after issuance of the trial court's opinion:

> After the parties filed their briefs, we granted Bellemead's motion to supplement the record with information establishing that on February 28, 2020, plaintiff's property was sold by order of the bankruptcy trustee. SB Building Associates Limited Partnership (SB), the sole member and equity interest holder of plaintiff, challenged the validity of the sale, arguing that it was not sold "for value," as required by federal law. On October 15, 2021, the Third Circuit affirmed the District Court's dismissal of SB's challenge as moot. In re 388 Route 22 Readington Realty Holdings, LLC, No. 20-2629 (3d Cir. Oct. 15, 2021). The court subsequently denied a petition for en banc review.
>
> [Id. at 62-63.]

Based on the sale of plaintiff's property, Bellemead moved to dismiss plaintiff's appeal as moot. Id. at 63. We denied Bellemead's motion, noting that the

10

bankruptcy court had authorized plaintiff to pursue the appeal, given that any award of damages to plaintiff on its NJCRA claims would inure to the benefit of the bankruptcy estate.  Id. at 64.  We held,

> [w]hile plaintiff's pursuit of sewer capacity may have been mooted by its loss of title to the property, the Township Defendants' violations of the NJCRA occurred while plaintiff held title to the property.  Its subsequent loss of the property does not moot plaintiff's right to seek damages it suffered when the Township Defendants thwarted its intended development of the property.
>
> [Ibid.]

The Supreme Court denied Readington's petition for certification on the NJCRA claims.  388 Route 22 Readington Realty Holdings, LLC v. Twp. of Readington, 252 N.J. 199 (2022).  Plaintiff did not file a petition for certification of our decision affirming the order granting summary judgment to Bellemead.

B.  Plaintiff's Challenge to Final Site Plan Approval Extension.

While plaintiff's challenge to the allocation of sewer capacity was pending, on June 27, 2016, the Board approved an extension of the final site plan approval for the Project to June 30, 2020.

On August 16, 2016, plaintiff filed a complaint in lieu of prerogative writs challenging the Board's 2016 extension.  The outcome of that suit is the subject of this appeal.  Plaintiff alleged that the Board's decision to grant the extension

11

was arbitrary, unreasonable, and capricious because: (1) the Board failed to make proper findings of fact and based its decision on erroneous facts; (2) in light of Bellemead's tender of 11,260 gpd in sewer capacity, it does not have the sewer capacity required to complete the Project; (3) Bellemead's agreement to make an affordable housing payment to Readington was an illegal extraction invalidating the extension; (4) the Board improperly relied on expert reports and the opinions of professionals when it granted the extension; and (5) the absence of a verbatim record of the Board's decision hindered review of its validity.

In 2021, after plaintiff lost its property, the trial court held a hearing at which Bellemead argued, along with the substantive merits of the 2016 extension, that plaintiff lacked standing to challenge the extension because it was not a property owner or taxpayer in Readington. Plaintiff argued it was a property owner and taxpayer when it filed the complaint and, given the importance of the issues it raised, the court should decide the validity of the extension even if plaintiff no longer had standing. Bellemead countered that plaintiff needed standing throughout the case to challenge the extension.

On December 17, 2021, the trial court issued a written decision. The court held that plaintiff had standing at the time it filed the complaint because it was a taxpayer and property owner with "a demonstrable and articulable interest in

the outcome of the matter." The court also found plaintiff continued to have a sufficient stake in the outcome after it lost its property because there were important public policy reasons to review whether the Board issued the 2016 extension in accordance with law. The trial court also held plaintiff's "interest as a former property owner and its decades long battle on behalf of itself and other similarly situated property owners is in the [c]ourt's view sufficient to show 'real adverseness,'" and "transcends its interest as a former taxpayer so that the [p]laintiff's interest would be harmed by an unfavorable decision." Thus, the trial court concluded that plaintiff had standing to continue its challenge to the 2016 extension despite the loss of its property. The court thereafter rejected each of plaintiff's substantive challenges to the 2016 extension.

A January 12, 2022 order upheld the 2016 extension and dismissed the complaint with prejudice.

Plaintiff appealed, arguing that the trial court's rejection of its substantive arguments was erroneous. Bellemead cross-appealed, arguing plaintiff lacked standing once it lost its property and that its appeal is moot because even if successful, plaintiff cannot obtain effective relief. Bellemead noted that the 2016 extension expired on June 30, 2020, without any changes to the zoning ordinance that would have affected the final site plan. As a result, invalidation

of the 2016 extension would have no impact on the final site plan or the availability of sewer capacity allocated to the Project.

In addition, on September 14, 2020, the Board approved a four-and-a-half-year extension of the final site plan approval to December 31, 2024. Plaintiff did not file an action challenging the 2020 extension. Consequently, the 2016 extension is no longer operative and the currently operative 2020 extension is unchallenged.

II.

We decide this matter based on Bellemead's cross-appeal. It is well-settled that "[m]oot or academic appeals are generally dismissed." Advance Elec. Co v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 166 (App. Div. 2002). We "will not decide a case if the issues are hypothetical, a judgment cannot grant effective relief, or there is no concrete adversity of interest between the parties." Ibid. "An issue is considered 'moot when our decision . . . can have no practical effect on the existing controversy.'" Wisniewski v. Murphy, 454 N.J. Super. 508, 518 (App. Div. 2018) (quoting Redd v. Bowman, 223 N.J. 87, 104 (2015)).

An extension of a final site plan approval does not extend the validity of the final site plan approval. Instead, the extension protects the final site plan

14

approval from any changes in the zoning ordinance that impact the site plan during the extension period.

> There is a common misapprehension that a final site plan approval "expires" at the end of the two-year period set forth in N.J.S.[A.] 40:55D-52a. The statute does not so provide; the site plan is given protection, or vested rights, against a change in zoning for said period [as extended], but if at the expiration of the two years [or any other extension period] there has been no change in zoning, the site plan continues to be in full force and effect until such time as the developer determines to proceed with the development.
>
> [Cox & Koenig, N.J. Zoning & Land Use Admin. § 23-5.2, at 325 (2024) (citing Palatine I v. Planning Bd., 133 N.J. 546, 553-554 (1993); MCG Assocs. v. Dep't of Envt'l Prot., 278 N.J. Super. 108, 127 (App. Div. 1994)).]

Final site plan approvals are valid indefinitely; they "expire" only in the sense that they are no longer immune from zoning changes without an extension after the period of protection ends. See Palatine, 133 N.J. at 554. In other words, if a property owner does not obtain an extension for final site plan under N.J.S.A. 40:55D-52, the final site plan remains in effect, but lacks protection from any subsequent changes in zoning affecting the final site plan.

It is undisputed that the 2016 extension has expired. Bellemead contends that Readington did not adopt any changes to the zoning ordinance affecting the Project during the extension period. Plaintiff has produced no evidence to the

15

contrary. Thus, based on the record before this court, the 2016 extension proved to be unnecessary to protect the final site plan for the Project from changes to the zoning ordinance. As a result, even if we were to agree with plaintiff's argument that the Board's approval of the 2016 extension was invalid, such a decision would have no effect on the final site plan approval, the Project, plaintiff, or any substantial public interest in the validity of the 2016 extension. See Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996) (holding that with respect to matter of "substantial importance, likely to reoccur but capable of evading review," mootness does not preclude our review). As the trial court found,

> [h]ere, notably, Bellemead's final site plan approval is still valid and has not expired. Absent an express indication that Bellemead has abandoned that approval, it will continue to be in effect until such time as Bellemead is ready to build. This would be the case even if the Board had denied Bellemead's extension application in 2016 instead of approving it. The only risk that Bellemead would have run in the absence of the extension was that the Township might change its zoning regulations. To the extent that [p]laintiff's arguments are premised on the assumption that what the Board extended in 2016 was the final site plan approval (as opposed to Bellemead's immunity from zoning changes), and that but for the extension, the approval would have expired, plaintiff's arguments are inapposite.

A-1848-21

We are unpersuaded by plaintiff's arguments that the appeal is not moot because a decision invalidating the 2016 extension would, in effect, invalidate the 2020 extension which currently protects the final site plan from relevant changes to the zoning ordinance. Plaintiff argues, in effect, that at some unspecified point in the future, plaintiff might purchase property in Readington that it wishes to develop, and there may not be sufficient available sewer capacity for that unspecified development, and the 2020 extension will protect the Project from an unspecified future change in zoning that would otherwise have caused Bellemead to abandon the Project and free up unused sewer capacity which could be allocated to the development of the property plaintiff might someday purchase. Plaintiff's argument is too speculative to warrant extended discussion. Plaintiff has not produced any evidence that even one aspect of this speculative argument is likely to come to fruition.

Nor do we agree that plaintiff's extensive efforts to obtain sufficient sewer capacity for the development of the property it once owned in Readington militates against a finding of mootness. Plaintiff's efforts were successful. Its litigation ultimately resulted in Bellemead surrendering sufficient unused sewer capacity dedicated to the development of plaintiff's property. Plaintiff never submitted development plans for its property and lost the parcel as the result of

17

its bankruptcy filing. Invalidating the 2016 extension, as plaintiff seeks to accomplish with this appeal, will not result in any further surrender of unused sewer capacity for use by plaintiff, who no longer owns property in Readington, or for that matter, for any other property owner in Readington. The 2016 extension, which has expired, had no impact on the unused sewer capacity allocated to Bellemead. Plaintiff's once meaningful interest in sewer capacity allocation in Readington evaporated when it failed to submit a development proposal for the property it owned in Readington and then lost that parcel in bankruptcy.

Dismissed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1848-21