20 A.3d 1165 (2011)
420 N.J. Super. 273
BROCKWELL & CARRINGTON CONTRACTORS, INC., Plaintiff-Respondent,
v.
KEARNY BOARD OF EDUCATION and Hall Construction, Inc., Defendants-Respondents, and
Dobco, Inc., Defendant-Appellant.
No. A-1806-10T4
Superior Court of New Jersey, Appellate Division.
Argued January 24, 2011.
Decided June 20, 2011.
*1166 Charles F. Kenny argued the cause for appellant (Peckar & Abramson, attorneys; Michael E. Smilow, River Edge, on the brief).
Robert T. Lawless, Florham Park, argued the cause for respondent Brockwell & Carrington (Hedinger & Lawless, attorneys; Mr. Lawless, of counsel and on the brief).
Connell Foley, attorneys for respondent Kearny Board of Education (Thomas S. Cosma and Jessica Palmer, Roseland, on the brief).
Lindabury, McCormick, Estabrook & Cooper, attorneys for amicus curiae The Mechanical Contractors Association of New Jersey, Inc. (Edward J. Frisch, of counsel; Mr. Frisch and Bruce P. Ogden, Westfield, on the brief).
Before Judges A.A. RODRÍGUEZ, GRALL and LEWINN.
The opinion of the court was delivered by
A.A. RODRÍGUEZ, P.J.A.D.
In this appeal from a public bidding dispute regarding a school building project, the central issue is the construction and application of N.J.A.C. 17:19-2.13(c). This regulation provides in pertinent part that, "[a] firm shall not be awarded a contract which, when added to the backlog of uncompleted construction work ... would exceed the firm's aggregate rating." The dispute is whether this requirement applies to subcontractors as well as general contractors. We hold that the regulation applies to both subcontractors and contractors pursuant to the Public Schools Contract Law (PSCL), N.J.S.A. 18A:18A-1 to -59, and the Educational Facilities Construction and Financing Act (EFCFA), N.J.S.A. 18A:7G-1 to -48.
The Kearny Board of Education (Board) opened bids for the "Kearny High School  Aircraft Noise Abatement and Renovations Project" (Project) on September 15, 2010. Dobco, Inc. (Dobco) was the lowest bidder, followed by Brockwell & Carrington (B & C). The Board awarded the contract to Dobco. Dobco's bid identified Environmental Climate Control, Inc. (ECC) as the heating, ventilation and air-conditioning (HVAC) subcontractor for the Project. ECC indicated that it would perform its portion of the HVAC work for $7,500,000. In connection with Dobco's bid, ECC submitted a "Notice of Classification" and a "State of New Jersey Form DBC 701 (Form 701)." These forms are required by the Division of Property Management and Construction (DPMC), which classifies contractors by permissible aggregate work volume based upon the given contractor's submissions detailing financial ability. It is undisputed that, at the time the bid was submitted, ECC's aggregate limit was $15,000,000. With Dobco's bid, ECC also submitted a Form 701 indicating that it had a backlog of uncompleted contracts *1167 totaling $3,500,000. Therefore, it could bid on this project as Dobco's subcontractor without exceeding its $15,000,000 aggregate limit.
B & C challenged Dobco's bid, asserting defects in the bid. B & C claimed that the HVAC work was valued at near $9,500,000 and ECC had therefore underbid the project. B & C also claimed that it had received a Form 701 from ECC for an unrelated contract a month earlier in which ECC had disclosed a backlog of uncompleted contracts exceeding $9,000,000. According to B & C, therefore, not only was ECC's Form 701 for the Project likely incorrect, but by bidding $7,250,000 on the Project, ECC had exceeded its aggregate limit.
The Board investigated. Peter Pivko, the architect for the Project, relayed Dobco's explanation that ECC had bid the project at $7,250,000 because Dobco planned on completing a portion of the HVAC work itself. Martin Hestor, the ECC estimator, determined that ECC's backlog of uncompleted contracts was actually $10,125,579 at the time of the bid submission. When this backlog was added to ECC's $7,250,000 bid on the Project, the sum exceeded ECC's aggregate limit.
B & C moved by way of order to show cause to disqualify Dobco's bid. Judge Maurice J. Gallipoli granted the order to show cause. In opposition, Dobco submitted the certification of Kenneth O'Boyle, ECC's president, asserting that:
As of August 31, [2010,] ECC's uncompleted contract work had a dollar value of $10,125,579; $3,231,329.20 of the work is being self-performed, $4,193,983.30 is being subcontracted, and $2,700,267.00 reflects the value of materials being purchased. As of September 30, [2010,] the dollar value of uncompleted work was reduced to $8,227,191.15; $2,603,211.35 of the work is being self-performed, $3,917,452.80 is being subcontracted, and $1,706,527.00 reflects the value of materials being purchased.
On the return date, Dobco and the Board argued that N.J.A.C. 17:19-2.13 and N.J.S.A. 18A:7G-37, generally do not apply to subcontractors; and, that N.J.A.C. 17:19-2.1(a) requires only that a subcontractor possess, rather than comply with a valid classification and rating. Specifically, Dobco argued that although N.J.A.C. 17:19-2.11(b) and -2.1(a) explicitly refer to subcontractors, the only section that requires the backlog calculation, N.J.A.C. 17:19-2.13(c), refers only to a "firm." Given the separate treatment given to subcontractors in other sections, Dobco argued that subcontractors are not included in the broad use of "firm" in N.J.A.C. 17:19-2.13(c).
In a November 29, 2010 written opinion, Judge Gallipoli rejected these arguments. He relied primarily on the EFCFA and our holding in Advance Electric Co. v. Montgomery Township Board of Education, 351 N.J.Super. 160, 175, 797 A.2d 216 (App.Div.2002), where we held that:
the Legislature has determined that the classification of bidders, as accomplished by the Treasurer's regulations, is a reasonable method by which to qualify both bidders and their subcontractors. ...
This conclusion is buttressed by the requirement in [the PSCL,] N.J.S.A. 18A:18A-26[,] that bidders be classified, and that a board of education can only accept bids from those "qualified in accordance with such classification."
[(emphasis added).]
This interpretation supports the broad legislative intent of "insur[ing] that quality work will be provided." Id. at 176, 797 A.2d 216.
Judge Gallipoli found that ECC was a "firm" within the meaning of N.J.A.C. *1168 17:19-2.13(c) and subject to its terms. Thus, the judge decided that ECC was subject to the aggregate rating limit set by N.J.A.C. 17:19-2.13(a). He also determined that the legislative intent articulated in 35 N.J.R. 1701(a) demonstrated that "the 85-percent deduction[1] was not intended to benefit a subcontractor, but a contractor seeking the award of a prime contract." Based on these findings and analysis, the judge concluded that Dobco's bid was materially defective, and denied Dobco the opportunity to cure its bid. The judge ordered the Board to award the contract B & C, the next lowest responsible bidder.
Dobco appealed and sought a temporary stay. We granted this request and expedited the appeal. No. M-2081-10 (App. Div. Dec. 10, 2010).
On appeal, Dobco raises three contentions. First, pursuant to N.J.S.A. 18A:7G-37, ECC is within its aggregate rating limit because a subcontractor's backlog of uncompleted work is not considered when assessing its compliance with its aggregate rating limit. Second, if ECC is subject to N.J.A.C. 17:19-2.13(a), they are entitled to deduct eighty-five percent of the value of work that it is subcontracting to others pursuant to N.J.A.C. 17:19-2.13(c) and (e), thereby keeping its bid within its aggregate rating limit. Third, Dobco argues that we should not consider whether Dobco's submission of ECC's erroneous DBC Form 701 was fraudulent, as B & C argues, because the trial judge did not reach that issue. We do not reach this issue either.
As did Judge Gallipoli, we reject Dobco's first two arguments and conclude that the PSCL and Advance Elec. support the conclusion that any subcontractor's bid on a project must not exceed the subcontractor's aggregate rating limit. Moreover we conclude that EFCFA, which was enacted subsequent to the Advance Elec. decision, provides an independent basis for holding that ECC must meet the requirements set by N.J.A.C. 17:19-2.13(c). ECC's non-compliance is a material defect that is fatal to Dobco's bid.
N.J.S.A. 18A:7G-37, which outlines the requirements for a "contractor certification," is explicitly applicable to subcontractors. Contrary to the Board's and Dobco's arguments, subsection (a) requires that "[a] pre-qualified contractor seeking to bid school facilities projects, and any subcontractors required to be named ..., shall, as a condition of bidding, submit a sworn contractor certification regarding qualifications and credentials." Ibid. (emphasis added). The statute goes on in subsection (b) and (c) to explain what "qualifications and credentials" are required, which includes, in subsection (c), a certification as to the contractor's aggregate rating. N.J.S.A. 18A:7G-37(a)-(c).
Dobco argues that the certification of aggregate rating referenced in subsection (c) is a separate certification that only contractors must submit. Dobco contends that this aggregate rating certification is not required in the typical subcontractor certification because it is not included in the four "qualifications and credentials" that subsection (b) lists. We disagree. To read the requirement of a certification of aggregate rating in subsection (c) as being only applicable to contractors and not subcontractors because of the literal arrangement of the subsections is not only illogical, but would hamper the Legislature's mandate that "[t]his act shall be construed liberally to effectuate the legislative intent *1169 and the purposes of this act." N.J.S.A. 18A:7G-29.
Moreover, the introduction in subsection (a) does not differentiate between the certification that a contractor or subcontractor must submit. Indeed, as Judge Gallipoli noted, the title to the statute, "Submission of a sworn contractor certification," refers to a single certification applicable to contractors and subcontractors alike. N.J.S.A. 18A:7G-37 (emphasis added). Therefore, pursuant to N.J.S.A. 18A:7G-37(c), both subcontractors and contractors "seeking to bid school facilities projects" must include a certification that their bid "and the value of all of [their] outstanding incomplete contracts do[] not exceed the firm's existing aggregate rating limit."
We also hold that subcontractors are "firms" subject to the certification requirements of N.J.S.A. 18A:7G-37 and N.J.A.C. 17:19-2.13(a). Contrary to Dobco's arguments, the regulations do not distinguish between subcontractors and firms. For example, N.J.A.C. 17:19-2.11(b) explains that "a firm must have a valid classification and rating appropriate to any project on which the firm may bid, or under which a firm will be designated as a subcontractor in principal trade. ..." See also N.J.A.C. 17:19-2.11(a)(1) (referring to both contractors and subcontractors as "firms"). In fact, a subcontractor may only obtain an aggregate rating limit from the DPMC if the "firm" submits, inter alia, a financial statement; a statement as to the "adequacy of the firm ... to undertake the project;" and a statement as to the "number of years that the firm has been engaged in the contracting business." N.J.A.C. 17:19-2.1(a), (b)(1), (2), (3).
Considering N.J.S.A. 18A:7G-37, N.J.A.C. 17:19-2.11(b) and our holding in Advance Elec. together, it is clear that the Legislature intended "to ensure that only qualified bidders perform the work." 40 N.J.R. 3959(a); see also Seacoast Builders Corp. v. Jackson Twp. Bd. Of Educ., 363 N.J.Super. 373, 378, 833 A.2d 84 (App.Div. 2003) ("[T]he plain intent of the regulation [N.J.A.C. 17:19-2.13 is] to insure the bidder's financial responsibility to undertake the work by requiring aggregate-rating compliance. ..."). To differentiate between subcontractors and contractors would not advance this goal.
Here, ECC was a "firm" within the meaning of N.J.A.C. 17:19-2.13 and N.J.A.C. 17:19-2.1, and "bid" the Project within the meaning of N.J.S.A. 18A:7G-37 and N.J.A.C. 17:19-2.13(a). ECC was therefore required to certify that it was bidding within its aggregate rating limit pursuant to N.J.S.A. 18A:7G-37 and N.J.A.C. 17:19-2.13(a) and (c).
We also hold that any contractor is entitled to the benefit of the eighty-five percent reduction provision in N.J.A.C. 17:19-2.13(c) and (e), provided that the contractor's backlog includes single prime contracts in which that contractor has subcontracted a portion of that work. Where a firm subcontracts a large portion of its outstanding work, the total value of its backlogged contracts could be unreliable for determining the financial ability of that firm to bid on a given project. Thus, "to eliminate some of the previous barriers to firms that were capable of performing work but were nevertheless barred by the existing regulatory provisions," the DPMC amended N.J.A.C. 17:19-2.13. 35 N.J.R. 1701(a). Specifically, N.J.A.C. 17:19-2.13(c) and (e) now provide:
(c) A firm shall not be awarded a contract which, when added to the backlog of uncompleted construction work, as shown on Form DPMC 701, would exceed the firm's aggregate rating. The backlog of uncompleted construction *1170 work shall be the total contract value of unbilled work, as evidenced by the most recent approved invoice ... received by the bidder before or on the date of the bid. The firm may deduct 85 percent of the total contract value of the work performed by principal trades, as described in (e) below, on such uncompleted work.
. . . .
(e) On any project where a firm is awarded a single prime contract which encompasses work to be performed by a subcontractor in a principal trade, as defined in N.J.S.A. 52:32-2, including... ventilation ... work, and general construction, and where the work to be performed by the subcontractors is specifically identified in the bid, the firm shall calculate the value of the awarded contract (for purposes of determining how much the contract will contribute toward determining the firm's backlog) by deducting 85 percent of the actual subcontract price of the work to be performed by principal trades from the actual price of the contract awarded to it.
[(emphasis added).]
According to the unambiguous language of this regulation, if a firm has a "single prime" contract as part of its backlog of uncompleted work, then that firm may deduct eighty-five percent of the value of the subcontracted work on that prime contract when calculating the value of its backlogged contracts for future bids.
The legislative history of subsection (e) supports our interpretation. As we explained in Advance Electric, prior to 1999, schools were required "to seek both bids for each separate branch of work to be performed (i.e., plumbing, electrical, etc.), and also, included in a single, overall contract, bids for all services to be performed." 351 N.J.Super. at 169, 797 A.2d 216. In 1999, however, the regulation was amended to limit school boards to accepting only single prime contract bids. Id. at 170-71, 797 A.2d 216. To encourage competition in the bidding process, the regulations were also amended to include subsection (e) to allow firms with lower aggregate ratings to reduce the value of a significant portion of its backlogged work. Ibid. Therefore, interpreting this regulation as applying only to contractors with a backlog of single prime contracts harmonizes the explicit language of the regulation with its legislative history.
Here, it is clear that Dobco is entitled to employ the eight-five percent reduction provision set by N.J.A.C. 17:19-2.13(c) and (e) to reduce the value of any of its backlogged, single prime contracts on which a portion of the work was subcontracted. Pursuant to our analysis, however, ECC can also do so in calculating its backlog of contracts, provided that it has backlogged contracts in which it is a prime contractor and has subcontracted a portion of that contract.
We are mindful that O'Boyle's certification asserts that $4,193,983.30 of its backlog "is being subcontracted." However, O'Boyle did not certify that ECC was a single prime contractor with respect to any of those contracts. ECC therefore bid in excess of its aggregate rating. The inclusion of an unqualified subcontractor rendered Dobco's bid defective. We agree with Judge Gallipoli that "permitting a post-bid cure under these circumstances would afford Dobco an unfair advantage." See Stano v. Soldo Constr. Co., 187 N.J.Super. 524, 535-36, 455 A.2d 541 (1983) (holding that a contract could not be awarded to a "bidder employing [an unqualified] subcontractor").
Affirmed.
NOTES
[1] N.J.A.C. 17:19-2.13(e) permits a firm to reduce the value of its backlogged work by eighty-five percent in limited circumstances, which are addressed later in this opinion.