**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3818-16T3

EPIC MANAGEMENT, INC.,

    Appellant,

v.

NEW JERSEY SCHOOLS
DEVELOPMENT AUTHORITY, and
HALL CONSTRUCTION CO., INC., and
ERNEST BOCK & SONS, INC.,

    Respondents.

_____

Argued July 2, 2018 — Decided July 18, 2018

Before Judges Carroll and Rose.

On appeal from the New Jersey Schools
Development Authority.

Patrick T. Murray argued the cause for
appellant (Peckar & Abramson, PC, attorneys;
Gerard J. Onorata and Patrick T. Murray, on
the brief).

William Harla argued the cause for respondent
New Jersey Schools Development Authority
(DeCotiis, FitzPatrick, Cole & Giblin, LLP,
attorneys; William Harla and Thomas A. Abbate,
of counsel; Gregory J. Hazley, on the brief).
Robert T. Lawless argued the cause for
respondent Hall Construction Co., Inc.

(Hedinger & Lawless, LLC, attorneys; Robert T. Lawless, on the brief).

PER CURIAM

Appellant Epic Management, Inc. (Epic), the second-ranked bidder, appeals from the April 27, 2017 final agency decision of the New Jersey Schools Development Authority (SDA) awarding a contract to Hall Construction Co., Inc. (Hall), the first-ranked bidder, for the design and construction of an addition and renovations to Millville Senior High School (the Project). In its decision, the SDA rejected bid protests filed by Epic and Ernest Bock & Sons, Inc. (Bock),[1] the third-ranked bidder.

The SDA concluded that Hall's chosen electrical contractor, R. Palmieri Electrical Contractors, Inc. (Palmieri), did not exceed its aggregate rating limit set by the Treasury Division of Property Management and Construction (DPMC). The SDA also found Hall's alleged failure to indicate it would be self-performing electrical work on the Project not to be a material defect that warranted rejection of its bid because Hall's purchase of electrical equipment did not constitute the performance of electrical work.

On appeal, Epic contends the SDA violated its own administrative regulations, and that its final decision is

---

[1] Bock is not involved in this appeal.

arbitrary, capricious, and unreasonable. We conclude otherwise, and affirm substantially for the reasons expressed by the SDA in its April 27, 2017 decision.

## I.

The record establishes that on September 30, 2016, the SDA solicited bids for the Project. The SDA received five price proposals, which were publicly opened on March 2, 2017. Price and non-price scores were then weighted and tabulated to arrive at a final ranking of the bidders. Hall was ranked first, while Epic and Bock were ranked second and third, respectively.

As required by N.J.S.A. 52:18A-243(b) and the SDA's bid specifications, each bidder was required to identify any subcontractors it intended to use for the plumbing, HVAC, electrical, and structural steel work components of the Project. Section 1.3 of the bid specifications further required a design builder to indicate whether it intended to self-perform any of those four component services.

Hall's bid designated Palmieri as its electrical contractor. Hall did not identify itself as self-performing any of the electrical work.

Palmieri was DPMC classified and SDA prequalified for an aggregate contract limit of $15 million.[2] As part of Hall's bid, Palmieri submitted a DPMC Form 701 certifying that its unfinished work totaled $5,420,508. Palmieri's quote to Hall for the electrical subcontract work was $9,168,000. Together, Palmieri's subcontract quote and the value of its unfinished work fell within its $15 million aggregate limit.

On March 17, 2017, Epic lodged a formal protest with the SDA seeking a rejection of Hall's bid. Epic argued that Hall's bid was materially defective because it named an unqualified subcontractor. Specifically, Epic contended the value of the electrical work on the Project exceeded the approximately $9.5 million Palmieri had remaining under its aggregate limit and hence Palmieri was ineligible to perform the Project's electrical work.

Hall subsequently explained that it intended to directly purchase certain electrical supplies, and therefore Palmieri's pre-bid proposal to Hall excluded some of the required electrical equipment and materials for the Project. In turn, Epic argued that Hall's bid was defective because Hall failed to disclose its

---

[2]  This meant that the amount of any subcontract to Palmieri, plus the value of Palmieri's unfinished work on other projects, public and private, could not exceed $15 million.

decision to purchase materials and equipment as self-performing work.

The SDA received extensive written submissions from the parties and addressed in detail each of the issues they raised in its thorough April 27, 2017 decision. Initially, the SDA rejected Epic's contention that Hall was precluded from purchasing the materials used in the electrical phase of the Project. Citing the statutory language of N.J.S.A. 52:18A-243, the SDA explained:

> A plain reading of these provisions reveals that the work and materials for [school] facilities construction projects may be performed by a single contracting party. In other words, these provisions expressly authorize one contractor to provide all of the work and materials. However, these provisions also require that, to the extent another subcontractor will be used to provide "any" of the work and materials in the plumbing, HVAC, electrical or structural branches, then that subcontractor must be identified.

> Accordingly, there is nothing in the cited statute that precludes Hall from performing any of the work in the various branches or from obtaining any of the materials for that work. N.J.S.A. 52:18A-243(b) merely requires Hall to identify any of the subcontractors to whom it will subcontract for the furnishing of "any of the work and materials" for the applicable branches. Here, Hall has identified Palmieri as the subcontractor it will subcontract with to perform the electrical work. While there may be an inherent assumption that Palmieri will also purchase the associated materials, the statutory provision at issue here does not mandate that that be the case.

Next, the SDA rejected Epic's argument that if Hall purchased the electrical supplies, it was required by both the statute and Section 1.3 of the bid specifications to disclose itself as "self-performing" the specified electrical work, and that Hall's failure to do so was a material defect in its bid. The SDA found it "plainly evident" that

> the terms of the [request for proposals] only impose the self-performing identification and DPMC classification and [SDA] prequalification for the performance of any "work" in the applicable branches. There is absolutely no reference to the provision of materials in the context of the above requirements. As such, there was no requirement for Hall to identify itself as "self[-]performing" in the context of purchasing or obtaining materials for work relating to the four branches.
>
> . . . .
>
> This analysis is entirely consistent with common sense. As noted by Hall in its submissions, anyone can purchase electrical equipment from a supplier. Put another way, one need not be licensed as an electrical contractor to obtain such equipment.
>
> Furthermore, simply because the electrical subcontractor might not be purchasing the equipment does not mean that the electrical subcontractor can disclaim responsibility for the electrical work. N.J.S.A. 45:5A-9(a) provides that an electrical contractor "shall assume full responsibility for inspection and supervision of all electrical work to be performed by the permittee in compliance with recognized safety standards." As such, even if the electrical

6

equipment is purchased by another entity, the electrical contractor retains the statutory duty to ensure that the electrical work is performed in compliance with recognized safety standards.

We would also note that N.J.S.A. 2A:52:18A-243(a) makes explicit reference to "materials" when discussing plumbing and gas fitting, steam and hot water heating and ventilating apparatus, steam power plants, structural steel and miscellaneous ironwork. Significant by its omission is the absence of a similar reference to materials in the context of electrical work. As such, the terms of the statute itself suggest an intentional exclusion of the provision of electrical materials from the scope of electrical work.

## II.

On appeal, Epic argues that Hall's bid should have been disqualified because (1) it did not disclose its intention to self-perform work and the SDA's definition of "work" includes the providing of materials to a project; and (2) Hall's arrangement with Palmieri is an "improper sidestep" to the DPMC aggregate rating system. We disagree.

The general purpose of all public bidding laws is to "secure for the taxpayers the benefits of competition and to promote the honesty and integrity of the bidders and the system." In re Protest of the Award of On-Line Games Prod. & Operation Servs. Contract, Bid No. 95-X-20175, 279 N.J. Super. 566, 589 (App. Div. 1995). The laws are to be "construed as nearly as possible with

sole reference to the public good. Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition." Ibid. (quoting Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., 99 N.J. 244, 256 (1985)). The conditions and specifications of a bid "must apply equally to all prospective bidders; the individual bidder cannot decide to follow or ignore these conditions . . . ." Hall Constr. Co. v. N.J. Sports & Exposition Auth., 295 N.J. Super. 629, 635 (App. Div. 1996). Moreover, any material departure from the bid specifications renders a bid non-conforming and invalid. Ibid. Although minor or inconsequential discrepancies and technical omissions can be waived, material conditions cannot be waived by the contracting authority. Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 314 (1994).

Hence, in cases involving public bidding, the trial court must review a public body's determination as to whether a bid was conforming to determine whether its decision was arbitrary, unreasonable, or capricious. On-Line Games, 279 N.J. Super. at 590. One legitimate inquiry in reviewing a public body's decision on whether a bid was conforming is whether there is substantial evidence in the record to support the conclusion. Waste Mgmt. of

N.J., Inc. v. Union Cty. Utils. Auth., 399 N.J. Super. 508, 525-26 (App. Div. 2008).

When either a contractor or a subcontractor submits a bid for a project, it must also submit a certification that the award of "the subject contract would not cause the firm to exceed its aggregate rating . . . ." N.J.A.C. 17:19-2.13(a). Along with this certification, the firm must submit a statement of its current "backlog of uncompleted construction work, including public and private contracts." N.J.A.C. 17:19-2.13(a). "A firm shall not be awarded a contract which, when added to the backlog of uncompleted construction work [as shown on Form DPMC 701] would exceed the firm's aggregate rating." N.J.A.C. 17:19-2.13(c). This regulation applies to both contractors and subcontractors in school building bidding situations under N.J.S.A. 18A:18A-18. Advance Elec. Co., Inc. v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 176 (App. Div. 2002).

The aggregate rating limit laws ensure that a bidder is financially qualified to perform the work in addition to its other contracts. See Brockwell & Carrington Contractors, Inc. v. Kearny Bd. of Educ., 420 N.J. Super. 273, 280 (App. Div. 2011); Seacoast Builders Corp. v. Jackson Twp. Bd. of Educ., 363 N.J. Super. 373, 378 (App. Div. 2003) ("[T]he plain intent of the regulation was to insure the bidder's financial responsibility to undertake the

work by requiring aggregate-rating compliance both when the bid is submitted and when the contract is awarded."). Significantly, it is a material, non-waivable defect of a bid for a contractor to name a subcontractor who is not qualified by reason of failure to comply with its aggregate rating limit. Brockwell & Carrington, 420 N.J. Super. at 282.

That said, N.J.S.A. 18A:18A-18(b) does not require the submission of a pre-bid quote from a subcontractor before awarding a contract to a contractor. While there is no obligation to submit such a quote, a contractor may not execute a contract with a public entity that will place it over that limit, and a public entity is not authorized to execute that contract. Brockwell & Carrington, 420 N.J. Super. at 282. Thus, if Palmieri's quote put it over its $15 million limit, it would be a material breach of the bid specifications.

Applying these well-established principles to this case, we affirm substantially for the reasons expressed by the SDA in its April 27, 2017 administrative determination, which is supported by sufficient credible evidence. R. 2:11-3(e)(1)(D). We conclude that, for purposes of calculating its aggregate rating limit, Palmieri was not required to include on its DPMC disclosure form the value of the electrical equipment supplied by Hall, which was not within the scope of Palmieri's subcontract. Accordingly,

A-3818-16T3

Palmieri's quote, when coupled with the value of its uncompleted work, did not exceed its $15 million aggregate rating limit. Further, N.J.S.A. 52:18A-243 did not prohibit Hall from purchasing the electrical supplies for the project, nor did its purchase of such supplies in its capacity as general contractor constitute self-performance of the Project's electrical work.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3818-16T3