**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4411-17T2

JAMES FITZGIBBON, III,

      Plaintiff-Appellant,

v.

STAFFORD TOWNSHIP
BOARD OF EDUCATION and
FALASCA MECHANICAL, INC.,

      Defendants-Respondents.

_____

Argued March 4, 2019 – Decided May 13, 2019

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1107-18.

Evan M. Labov argued the cause for appellant (Hankin Sandman Palladino & Weintrob, attorneys; John F. Palladino, Evan M. Labov, and Sean P. Higgins, on the briefs).

Brent R. Pohlman argued the cause for respondent Stafford Township Board of Education (Methfessel & Werbel, attorneys; Brent R. Pohlman and Jason D. Dominguez, on the brief).

Steven A. Berkowitz argued the cause for respondent Falasca Mechanical, Inc. (Berkowitz & Associates, PC, attorneys; Steven A. Berkowitz, on the brief).

PER CURIAM

On February 22, 2018, defendant Stafford Township Board of Education (the Board) requested bids for mechanical/plumbing improvements to the Stafford Schools. The public bid package required that

> [a]ll bidders must be pre-qualified by the New Jersey Schools Development Authority and the State of New Jersey, Department of the Treasury. <u>All bidders must submit with their bid a current copy of their "Notice of Classification" and the "Total Amount of Uncompleted Contracts" . . . including the same documentation for all subcontractors</u>.
>
> [(emphasis added).]

The Board received two bids on March 16, 2018, the lowest from Surety Mechanical Services, LLC (Surety), and the second from defendant Falasca Mechanical, Inc. (Falasca). The Board rejected Surety's bid as non-conforming, because it failed to name its subcontractor(s), as required by the specifications and the Public School Contracts Law (the Act), N.J.S.A. 18A:18A–1 to –60. The Board awarded the $3.793 million contract to Falasca.

Falasca's bid package included certifications from its two subcontractors stating their "Total Amount of Uncompleted Contracts" (form DPMC 701), as

required by N.J.A.C. 17:19-2.13.  That Treasury Department regulation provides

in pertinent part:

> (a) A firm shall include with each bid a certification that the firm's bid for the subject contract would not cause the firm to exceed its aggregate rating limits, including consideration of its backlog of uncompleted construction work, including public and private contracts.
>
> (b) If at the time of a bid opening a question arises as to whether a bid for a project is within a firm's existing classification or aggregate rating, the bid shall be opened, and if the bid is at variance with the firm's trade classification or aggregate rating, the bid shall be rejected.
>
> (c) A firm shall not be awarded a contract which, when added to the backlog of uncompleted construction work would exceed the firm's aggregate rating. The backlog of uncompleted construction work shall be the total contract value of unbilled work, as evidenced by the most recent approved invoice (or other similar documentation) received by the bidder before or on the date of the bid.
>
> [Ibid. (emphasis added).][1]

---

[1]  The aggregate rating is "permissible aggregate work volume based upon the given contractor's submissions detailing financial ability."  Brockwell & Carrington Contractors, Inc. v. Kearny Bd. of Educ., 420 N.J. Super. 273, 276 (App. Div. 2011).  Under N.J.A.C. 17:19-2.13, the bidder must demonstrate "that the bid does not exceed its aggregate rating less uncompleted work . . . ." Seacoast Builders Corp. v. Jackson Twp. Bd. of Educ., 363 N.J. Super. 373, 378 (App. Div. 2003).

Both subcontractors stated their respective "amount of uncompleted work . . . from all sources (public and private)[,]" and each certified, "that the amount of this bid proposal, including all outstanding incomplete contracts does not exceed my prequalification dollar limit." However, both certifications predated the receipt of bids by several weeks; in fact, both predated the Board's advertisement for bids.

Plaintiff James FitzGibbon, III, a resident and taxpayer of Stafford Township, filed a verified complaint seeking an order to show cause that Falasca's bid was materially defective, because the subcontractors' certifications were not current at the time of the bid. The Law Division judge denied plaintiff's request for temporary restraints, but she set the matter down for a hearing in short order.

After considering oral argument on the return date, the judge concluded plaintiff failed to meet the requisite standard for injunctive relief. In particular, the judge concluded plaintiff did not establish "an ultimate, reasonable chance of success on the merits . . . ." See, e.g., Garden State Equal. v. Dow, 216 N.J. 314, 320 (2013) (holding successful request for injunctive relief must demonstrate "the applicant's claim rests on settled law and has a reasonable probability of succeeding on the merits . . . ."). The judge reasoned:

I'll assume for purposes of this application that the subcontractors were not made aware previously that [their DPMC 701s were] being submitted and . . . have not actually submitted a pre-bid for the project directly to Falasca. That it's clear that Falasca had a business relationship with these [sub]contractors. That ultimately the risk of the project falls to the successful bidder. I agree that there was no risk to the Board by this . . . defect, if, in fact, it's considered a defect, and without any risk to the Board it does not constitute a material defect . . . .

The judge dismissed the complaint and denied plaintiff's request for a stay.

Plaintiff sought to file an emergent motion for a stay pending appeal to this court. A panel of our colleagues entertained the application but denied plaintiff's motion. Plaintiff then filed an emergent application for a stay with the Supreme Court, which entered a one-justice order denying the application "for failure to satisfy the standards for emergent relief stated in Crowe v. DeGioia, 90 N.J. 126 (1982)."

Before us, plaintiff argues "Falasca's failure to provide a current statement" of their subcontractor's uncompleted work made the bid materially defective. Our courts have adopted a two-prong test first articulated by Judge Pressler in Township of River Vale v. R.J. Longo Construction Co., 127 N.J. Super. 207, 216 (Law Div. 1974), for determining whether a deviation is material.

5

A deviation is material if: (1) waiver of such defect deprives the purchaser of its assurance that the contract will be entered into, performed, and guaranteed according to the specified requirements, and (2) it adversely affects the competitive bidding process by placing a bidder in a position of advantage over other bidders, or by otherwise undermining the necessary common standard of competition.

[Hall Constr. Co. v. N.J. Sports & Exposition Auth., 295 N.J. Super. 629, 637 (App. Div. 1996) (citing Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 315 (1994)).]

Plaintiff argues the Board lacked discretion to waive a material defect and award Falasca the contract. See Meadowbrook Carting, 138 N.J. at 314-15.

Defendants counter these arguments, contending Falasca's bid was not materially defective. Defendants also contend the appeal is moot, because the work has essentially been completed.[2] Plaintiff does not dispute this, but argues the appeal presents an issue of great public importance that will continue to

---

[2] Falasca also argues that plaintiff failed to prove that the awarded contract actually caused the subcontractors to exceed their aggregate limits, which, it contends, was evidence critical to plaintiff's success. We reject this argument out of hand. Plaintiff never had the opportunity to engage in even limited discovery, nor does the appellate record include anything indicating that Falasca provided information to the judge at the time of the hearing regarding the subcontractors' current aggregate limits at the time of the bid. We also reject the idea that plaintiff was required to furnish that proof in order to succeed.

evade review. Without accepting defendants' arguments on the merits, we dismiss the appeal as moot.

"Mootness is a threshold justiciability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010) (citing Jackson v. Dep't of Corr., 335 N.J. Super. 227, 231 (App. Div. 2000)). "An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J Super. 214, 221-22 (App. Div. 2011)). However, courts may decide such cases where the issues "are of substantial importance and are capable of repetition while evading review" unless determined by courts. Advance Elec. Co. v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 166 (App. Div. 2002) (citing Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165 (1998)).

We acknowledge the public bidding process raises issues of substantial public importance. Id. at 166-67. In Advance Electric, we considered the merits of an otherwise moot appeal because the plaintiff/unsuccessful bidder presented a facial challenge to the Act, arguing, in part, the failure to adopt regulations

governing the qualifications of subcontractors forced school boards to solicit separate bids for each portion of the work. Id. at 164, 167-68. We concluded that the "issue plainly is capable of frequent recurrence until such time as either subcontractor qualification regulations are specifically adopted under the Act, or until the issues that [the plaintiff] now raises are judicially resolved." Id. at 167.

On the other hand, in Betancourt, we recognized the "public interest in decisions regarding the termination of life-sustaining medical treatments[,]" 415 N.J. Super. at 313, and that the case "involve[d] a situation that could evade judicial review." Id. at 314. Nevertheless, we dismissed the appeal as moot based on the "unusual circumstances of [the] case [that] ma[d]e a recurrence of this specific set of facts unlikely." Id. at 315, 319.

We do not minimize the bona fides of plaintiff's claim. In Seacoast Builders, although on different facts, and interpreting a prior version of N.J.A.C. 17:19-2.13, we held "it [was] plain that the bidder must include with its bid the required certification that the bid does not exceed its aggregate rating less uncompleted work and that that condition must also be met at the time of the bid award." 363 N.J. Super. at 378 (emphasis added). Nor do we necessarily agree with the judge's assessment of the potential materiality of the defect. See

Brockwell, 420 N.J. Super. at 276, 278-79 (finding a bid was materially defective when the subcontractor's bid exceeded its aggregate limits less its backlog of uncompleted contracts).

However, the record fails to reveal that contractors and subcontractors routinely supply stale DPMC 701 forms, or that public entities frequently excuse that conduct, such that the particular facts presented pose a prevalent problem in the realm of the public bidding statutes.[3] More importantly, we doubt that if such a problem were recurrent, it would escape our review. See Barrick v. State, Dep't of Treasury, 218 N.J. 247, 264 (2014) (noting "[a]ppellate review" of public bidding disputes "should be pursued with . . . alacrity"). Unfortunately, although plaintiff exercised diligence in pursuing his right to timely review in this case, it proved elusive. We trust it will not happen again.

Dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Plaintiff supplied an unpublished opinion of another panel, in which our colleagues held that the failure to put any dollar amount of uncompleted work on the DPMC 701 was a material defect that could not be waived. The appeal in that case was not moot and presented different facts from those presented here.

A-4411-17T2